**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **UNITED STATES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. PJM-08-0518 |
| vs. | ) |
| | ) |
| **COLLIN MATHEW McKENZIE-GUDE,** | ) |
| | ) |
| Defendant. | ) |

**SECOND SUPPLEMENT TO DEFENDANT'S RESPONSE**
**TO THE GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

COMES NOW Collin McKenzie-Gude, by and through the undersigned counsel, and submits a Second Supplement to the Defendant's Response to the Government's Memorandum in Aid of Sentencing and states as follows:

**I.  RELEVANT HISTORY OF EVENTS IN RELATION TO SENTENCING**

1. On **December 7, 2009:** The government filed its Memorandum in Aid of Sentencing (Doc. 49).

2. On **December 30, 2009,** Mr. McKenzie-Gude filed a response to the Government's Memorandum in Aid of Sentencing.

3. On **January 4, 2010,** the Court conducted a conference call to discuss and decide the Defendant's Brady motion, to which the Government had not yet responded in writing (response due January 4, 2010).

   a. The Court denied the defendant's requests for agents' notes of interviews of Patrick Yevsukov, including but not limited to, interviews of **July 29, 2009** and **July 30, 2009** (wherein Yevsukov spoke to authorities without representation of counsel) and

interviews of **August 15, 2008, October 10, 2008, July 27, 2009,** and **August 11, 2009.**

b. The Court ordered the production of the FD-302 report of the interview of Meghan Haney-Yevsukov (Patrick Yevsukov's mother).

c. The Court ordered the production of agents' notes of the interview of Serafim Yevsukov (Patrick Yevsukov's father).

3. On **January 5, 2010,** the Government produced additional discovery consisting of:

a. FD-302 report of an interview with Patrick Yevsukov on **October 10, 2008;**

b. Handwritten notes of an interview with Patrick Yevsukov on **August 11, 2009;**

c. FD-302 report of an interview with Meghan Haney-Yevsukov on **August 15, 2008** [report contains extensive Brady material];

d. Handwritten notes of an interview with Serafim Yevsukov on **August 6, 2009** [report contains Brady material].

This discovery contains statements that contradict contentions made in the Government's Memorandum in Aid of Sentencing.

4. On **January 7, 2010,** at the sentencing hearing, the Government, at the order of this Court, produced prosecution and agent notes that also contradict and rebut contentions in the Government's Memorandum in Aid of Sentencing.

5. On **January 8, 2010,** Assistant US Attorney Bryan Foreman produced two additional sets of law enforcement notes from interviews conducted with

Patrick Yevsukov on **July 29, 2008,** which appear to be the law enforcement notes conspicuously absent from the **July 29, 2008** interview by law enforcement and a center of contention by Defendant's counsel during the **January 4, 2010** telephone conference.[1]

The accompanying letter of **January 8, 2010** stated specifically:

> **I am sending you interview notes from two additional interviews with Patrick Yevsukov conducted on July 29, 2008. The first interview was conducted at the District 1 Station and the notes are three pages long. The notes contain what appear to be verbatim statements of answers provided by Patrick Yevsukov. The second interview was conducted in the back of a bomb squad van and is one and one-half pages long. These notes also contain what appear to be verbatim statements of answers provided by Patrick Yevsukov. These notes were discovered by me during a conversation with Dan Maxwell following yesterday's hearing[2].**

---

[1] This Court will remember that the undersigned was vociferous in his belief that there had to be a Q&A session with Patrick Yevsukov prior to Patrick Yevsukov writing a statement in longhand on July 29 and July 30, 2008. However, counsel could only proffer his opposition to the Government's contention that these statements "stood alone," based upon counsel's four years as an Assistant State's Attorney for Prince George's County, and thereafter, counsels' 34 years as a criminal defense attorney. We now find that the handwritten notes provided on January 8, 2010 contain an extraordinary amount of what clearly appears to be Brady material.
   The late disclosure of Brady material is a consistent and obvious pattern and tact used by the Government to gain advantage at trial and/or sentencing. Please see, United States v. Mouzone, 2009 WL 3617748 (D.Md.); Magistrate Paul W. Grimm, Report and Recommendation, October 29, 2009.

[2] Further, the Government apparently has used considerable literary license when he stated "these notes were discovered by me during a conversation with Dan Maxwell following yesterday's hearing." The truth is that the undersigned had served Lt. Daniel Maxwell with a subpoena to appear at sentencing, and after the continuance was granted, spoke with Lt. Maxwell in the witness room just outside courtroom 4C. Lt. Maxwell, upon questioning, immediately disclosed that he had notes of interviews (Q&As) which proceeded the handwritten statements of Patrick Yevsukov, on July 29 and 30, 2008. Lt. Maxwell indicated to the undersigned that he had previously disclosed these notes, and given the originals, to the State's Attorney's Office (as part of the joint State-federal investigation), and that he could not disclose these notes to the undersigned without AUSA Bryan Foreman's permission. The undersigned instructed Lt. Maxwell to seek AUSA Foreman's permission immediately in this regard since the notes could corroborate counsel's proffer during the telephone conference of January 4, 2010.

3

## II. DEFENDANT'S ACCEPTANCE OF RESPONSIBILITY

The Court and the United States Probation Office are uniquely aware that the Government has taken issue with Mr. McKenzie-Gude's acceptance of responsibility.  In particular, the Government perceives that Mr. McKenzie-Gude "is limiting his own wronging and attempting to place the blame for his possession of these chemicals on another person."  Doc. 49 at 5; Government's letter dated **November 6, 2009,** to John P. Taberski, U.S. Probation Office.

Indeed, the Government submits that it "will present evidence at the sentencing hearing that will show the Defendant acquired **the vast majority of these chemicals on his own without the assistance of anyone**."  Doc. 49 at 5 (emphasis added).[3]

In spite of the fact that Mr. McKenzie-Gude has consistently taken the position that the majority of these chemicals were initially in Patrick Yevsukov's possession, that is, he agreed to receive them from Yevsukov in the face of Yevsukov's parents' divorce proceedings, it was not until **January 5, 2010** that Defendant's counsel learned that Patrick Yevsukov told federal authorities precisely that between **July 29, 2008** and **August 11, 2009,** if not thereafter.

---

Upon information and belief, based upon notes of AUSA Foreman disclosed at the sentencing hearing on January 7, 2010, AUSA Foreman was aware of the statements of Patrick Yevsukov taken by Lt. Maxwell.

[3] For reference purposes, attached hereto are the first five pages of an FBI Report of Examination dated December 9, 2008 that lists the items seized. (Ex.1).

4

On **January 5, 2010,** the Government produced notes taken by FBI Special Agent Victoria Backes during a debriefing of Patrick Yevsukov on **August 11, 2009.**[4]  Of particular relevance to the Government's specious and unsupported claim that Mr. McKenzie-Gude is unwilling to accept responsibility and/or is attempting to shift blame, Special Agent Backes's notes clearly record Patrick Yevsukov exclaiming to authorities, in answer to their questions, among other things:

a. **YEVSUKOV:** "gave him [Collin] demos, a lot of stuff before I sold him safe […] nitric acid, sulfuric acid, after that it was stuff he [Collin] asked me 4";

b. **YEVSUKOV: "Pot [potassium] powder & Mag [magnesium] nitrate nitromethane → gave stuff to C [Collin] after protective order";**

c. With respect to a photograph Number 27 (Ex. 2), which depicts a container labeled Nitromethane, **YEVSUKOV:** "-this one I gave Collin […] Not my writing trinity Lab supply  -gave to him  -  **Collin was 'holding this stuff' He knew I wasn't allowed to keep them anymore";**

d. With respect to a photograph Number 30 (Ex. 3), **YEVSUKOV: "alum [aluminum] powder** – My handwriting; mulled in tumbler PD {police department] found in my room";

e. With respect to internal FBI photographs Numbers 82-84 shown to Patrick Yevsukov at the debriefing: **YEVSUKOV: "Ama. [ammonium] nitrate → mine";**

f. **YEVSUKOV: "Na [sodium] nitrate – mine ordered w/ lots of other chemicals.** We [Patrick and ?] waited for several hours gave him can as 'thank you'";

g. **YEVSUKOV: "Na [sodium] nitrate way before prot. [protective] order";**

h. **YEVSUKOV: "Nitromethane – mine".**

---

[4]   An investigative report (FBI 302) having not been prepared for this debriefing, the Government supplied the interview notes.

5

(Emphasis added).

Special Agent Backes's notes gave the defense team "great pause" due to the glaring incongruities between Patrick Yevsukov's apparent admission that most of the chemicals found in the Defendant's home were Patrick Yevsukov's and the Government's patent efforts to deny Mr. McKenzie-Gude acceptance credit for asserting the same.[5] Indeed, a review of the FBI inventory of chemicals (Ex. 1) shows that not only were most of the chemicals Yevsukov's, but nearly all, if not all, of what should be properly seen as the "serious chemicals" (i.e., those that could not be readily purchased at beauty supply or hardware stores) were Yevsukov's.

Compounding the defense team's dismay are the interview notes the Court ordered to be turned over to Mr. McKenzie-Gude this past Thursday, **January 7, 2010.** In addition to corroborating Agent Backes's memorializing the **August 11, 2009** proffer session, this new information reveals that the prosecution was then, and is presently, fully aware that most of the chemicals were Patrick Yevsukov's.[6]

---

[5] Of equal concern is the "11th hour" and dilatory disclosure of these notes, only on the heels of the Court's order during the January 4, 2010 teleconference, relative to the Government's Brady obligations. Special Agent Backes's notes are obvious Brady material that unquestionably should have been disclosed earlier given the lack of a corresponding investigative FD-302 report. Counsel for the Government was present at the debriefing, and therefore cannot be heard to deny any knowledge of the existence of Agent Backes's notes.

[6] Patrick Yevsukov's admissions regarding the chemicals he gave Mr. McKenzie-Gude call the Government's candor to the Court into serious question, particularly where, as seen herein, both prosecutors who filed the Government's sentencing memorandum and appeared at the January 7, 2010 hearing were present for Yevsukov's debriefing.

Notes taken by AUSA Mara Zusman during the **August 11, 2009** proffer clearly show Patrick Yevsukov stating to authorities, among other things:

a. **YEVSUKOV:** "PY [Patrick Yevsukov] gave CMG [Collin McKenzie-Gude] **chemicals >1x [more than one time] gave CMG a lot right before sold safe – within June '08.** another time: 'really dang. [dangerous] stuff' –nitric acid –sulfuric acid –nitromethane – others";

b. **YEVSUKOV:** "1st ~~later~~ (early on) whatever CMG asked for – pot. nitrate –mag. powder **majority: after PO [protective order] = filed   Serafim freaked out – PY gave to CMG** everything = in containers from manufacturer   glass = wrapped in towels   some = in white paint bucket";

c. With respect to a photograph Number 27 (Ex. 2), **YEVSUKOV:** "nitromethane – gave to CMG   handwriting – maybe from Trinity Lab Supply";

d. **YEVSUKOV: "CMG & PY talked about these chem. [chemicals] often   CMG knew PY couldn't keep them   PY asked CMG if he wanted them – CMG said yes**";

e. With respect to a photograph Number 30 (Ex. 3), **YEVSUKOV:** "semi-fine … [aluminum powder] – PY gave CMG   PY's handwriting   milled in tumbler in PY's room";

f. **YEVSUKOV:** "CMG repackaged what PY gave him to hide it from his parent" with an arrow from "repackaged" to "duffel bags, backpacks, clothes";

g. With respect to a photograph Number 78 (Ex. 4), **YEVSUKOV:** "HD [Home Depot] bucket   PY gave CMG orange bucket w/ chemicals in it.  Not sure if Ex. 78 is PY's bucket";

h. **YEVSUKOV:** "PY & CMG waited for UPS to come – picked up chem.  PY gave chemicals as thank-you to CMG […] Serafim knew re: UPS package. Sod. Nitrate & sulfuric acid   nitromethane – PY's";

i. **YEVSUKOV:** "brown bottles = PY's nitric acid bottles from Art Chemicals.com (art supply)   transferred to CMG but <u>not</u> the same day as safe   CMG made sure his parents weren't home"; and

j. **YEVSUKOV:** "PY = into thermite".

7

(Emphasis added).

The notes taken by AUSA Bryan Foreman during the **August 11, 2009** proffer once again clearly show Patrick Yevsukov informing authorities, among other things:

a. "When did you give Collin chemicals[?]"

   **YEVSUKOV:** "**Collin was provided with alot of chemical right around the time he sold Collin the gun safe** nitric acid; sulfuric acid, nitromethane potassium nitrate and magnesium to make his flash bang";

b. "Shown Ex 27 – it was also provided to Collin; thinks this was"

   **YEVSUKOV:** "**Told Collin his Dad would no longer allow him to keep it so he allowed Collin to have them**"

   **YEVSUKOV:** "Patrick asked Collin if he wanted them and Collin said yes";

c. "Shown Ex 30 – **YEVSUKOV:** "This is Patrick's handwriting; he [Yevsukov] milled this in the tumbler found in his room";

d. "Shown 76, 77 and 78"

   **YEVSUKOV:** "This was given to Collin by Patrick, all were provided to Collin on the day of transfer"

   **YEVSUKOV:** "doesn't recall Collin having any of this stuff previously";

e. **YEVSUKOV:** "Ammonium nitrate is Patrick's (ziplock's with duct tape)"

f. **YEVSUKOV:** "Sodium nitrate was Patrick's, gave this to Collin on a different occasion";

g. **YEVSUKOV:** "Sulfuric acid – huge jug. This was delivered to Patrick then took this back to Collin's and split it up.[7]
   **YEVSUKOV:** "This was a shipped [sic] to Patrick, it was HazMat";

---

[7] It is unclear how, if there was **one** "huge jug" the acid shipped to Yevsukov was "split up".

  h. **YEVSUKOV:** "Nitro Methane – that was Patrick's he gave to Collin";

  i. **YEVSUKOV:** "Nitric Acid – this was in the brown bottles, this was Patrick's stuff, came from store called Art Chemicals this was given to Collin, not the same day as the safe.  Patrick recalls that Collin went out of his way to keep this from his parents".

(Emphasis added).

  In sum, and as submitted previously, the Government has long known that Patrick Yevsukov, together with his father Serafim Yevsukov, delivered significant chemical materials to the Defendant's home.

  The Government's effort to deny Mr. McKenzie-Gude "acceptance of responsibility credit," suggests both bad faith and a violation of the parties' plea agreement.  Accordingly, when the Court considers the Defendant's request for non-guidelines sentence, the Court should consider a reduction analogous a third point for acceptance of responsibility to which the Defendant is deserving.

* * *

  The Government, in its sentencing memorandum, suggests "...there is no evidence that the Defendant intended a career with DSS or other governmental security departments."  Doc. 49 at 7-8.  However, the Government, in its disclosure of **January 5, 2010**, included statements from Serafim Yevsukov, Meghan Haney-Yevsukov, and Patrick Yevsukov, <u>Brady</u> material not previously disclosed:

  a. **August 6, 2009** interview with Serafim Yevsukov:

> Serafim Yevsukov: "@ 1ˢᵗ he wanted to be a cadet @ w. pt. [West Point]...**wanted to become someone who protects diplomats abroad**."

b. **August 15, 2008** interview with Meghan Haney-Yevsukov:

> Meghan Haney-Yevsukov: "Collin and Patrick were friends and shared similar interests which included...**looking into law enforcement as possible future**."

c. **October 10, 2008** interview with Patrick Yevsukov:

> Patrick Yevsukov: "**McKenzie-Gude showed Yevsukov Continuity of Government (COG) sites on Google Earth because McKenzie-Gude wanted to work at those sites one day**."

Importantly, Patrick had previously corroborated these statements that were belatedly disclosed on January 5, 2010, when he stated in an interview on **August 7, 2008**, "he **[Collin] wanted to be a secret agent for the USG** [United States government] and fly around the world."  Also, included in the items seized from Mr. McKenzie-Gude's computer was

   a.  A "Statement of Interest" (date 11/1/2007), included in Mr. McKenzie-Gude's application to American University wherein he wrote:  "**I have decided that American University is the place for me. I believe that the School of International Service, the wealth of study abroad programs, and the vast array of internships will prove invaluable to me in pursuing my future career with the Department of State**."  Ex. 5.

   b. An essay (dated 8/29/07) written by Mr. McKenzie-Gude for his "Film as Literature" class at St. John's College High School entitled

"Personal Description," (Bates stamped 476), in which Mr. McKenzie-Gude writes:

> **After high school Collin plans to attend American University's School of International Service, where he will major in international relations.** Furthermore in his junior and senior years he would like to transfer to the American University in Bruit, Lebanon providing that it has reopened by that time. As recently as this past June Collin thought that he would like to do ROTC in college and then pursue a career in the Army. However **he has now decided that he would rather go to work as a special agent with the Department of State's Bureau of Diplomatic Security.**

Ex. 6. (Emphasis added).

### III. NUMBER OF DESTRUCTIVE DEVICES

The central issue of the Government's claim that the Court should enhance Mr. McKenzie-Gude's sentence for the possession of materials that could, in theory, be used to manufacture seven destructive devices, is Mr. McKenzie-Gude's **subjective intent.** See United States v. Strache, 202 F.3d 980, 986 (7th Cir. 2000).

It should be highlighted that nowhere in the discovery produced to date does Patrick Yevsukov (or anyone else who knew Mr. McKenzie-Gude) claim that Mr. McKenzie-Gude intend to manufacture Methyl Ethyl Peroxide, Triacetone Triperoxide, Potassium Nitrate Fuel, Sodium Nitrate Fuel, Ammonium Nitrate Fuel, Urea Nitrate or Nitromethane. Notably, to the extent the Government claims that Nitromethane was in-and-of-itself a destructive device, Patrick Yevsukov admits, supra, that the Nitromethane seized was his. Similarly, as seen above, Yevsukov admitted that many of the chemicals purportedly necessary to manufacture

11

those devices were his (e.g., sulfuric acid, aluminum powder, sodium nitrate, ammonium nitrate and nitric acid).

As to the issue of intent, Mr. McKenzie-Gude notes one other aspect of the Government's **August 11, 2009** debriefing of Patrick Yevsukov. Special Agent Backes's notes from that session record Patrick Yevsukov telling authorities: "We theorized a lot. Only explosive was acetone peroxide." See AUSA Mara Zusman 8/11/09 Notes ("PY & CMG 'theorized a lot'"). Upon information and belief, the acetone peroxide explosion concerns the incident in which Patrick Yevsukov caused an explosive fire in his family's kitchen, which his father Serafim Yevsukov then videotaped. It is undisputed that Mr. McKenzie-Gude was not present or party to that incident.

In short, beyond Mr. McKenzie-Gude's admitted research (in tandem with Patrick Yevsukov), the Government has no evidence that Collin McKenzie-Gude intended to manufacture any of the devices suggested by its explosives expert, Supervisory Special Agent Richard Stryker. Respectfully then, the Court should decline to hear testimony from Agent Stryker or, in particular, to allow the Government to play video clips depicting the detonation of such devices. Absent any evidence of intent, the unmistakable purpose of these videos is simply to inflame the passions of the Court and, knowing the media coverage surrounding this case, the public-at-large. The Government has done enough damage[8]

---

[8]  For instance, where it suggested that the highlighted St. John's faculty list was in Mr. McKenzie-Gude's possession, the Government, in fact, knew as early as July 28/29, 2008 that Patrick Yevsukov possessed this list -- purportedly to investigate his

12

to Mr. McKenzie-Gude's life and reputation[9], and should not be allowed to do more.

                                Respectfully submitted,
                                THE LAW OFFICES OF STEVEN D. KUPFERBERG

                By:             /S/
                        Steven D. Kupferberg, Bar #00116
                        5904 Hubbard Drive
                        Rockville, Maryland 20852
                        (301) 231-9480
                        kufflaw@aol.com

                        Attorney for Collin McKenzie-Gude

---

teachers at St. John's College High School (Patrick Yevsukov had access to the Montgomery County Police computers). The Government further insinuated falsely that Mr. McKenzie-Gude intended to do harm to individuals at St. John's College High School.
     Further, the Government has repeatedly suggested, without substantiation by credible facts, that Mr. McKenzie-Gude had a motorcade map to Camp David. Moreover, the Government has offered, in notes of Patrick Yevsukov's debriefings, that Mr. McKenzie intended to do harm to Presidential candidates Barack Obama and/or John McCain without anything more than Patrick Yevsukov's fanciful ideations – Yevsukov being someone who requested to invoke his Fifth Amendment privilege even after accepting a plea offer in which he has agreed to testify truthfully when called to do so. In this regard, the Government tellingly declines to call Patrick Yevsukov as a witness, opting instead to rely on a strategically edited compilation of at least eight, inconsistent interviews over 22 hours presented by Special Agent Victoria Backes.

[9] Notably, during the 17-plus months that Mr. McKenzie-Gude has sat in jail, making the best out of a very difficult situation, Patrick Yevsukov has lived freely in the community, graduated high school and, according to AUSA Zusman's notes, is now attending college on "full scholarship", studying business administration. Experience suggests that the Government, which is belatedly (i.e., having taken "no position" on January 7) fighting to have this Court find that Mr. Yevsukov has Fifth Amendment rights preventing his testimony, will encourage the Montgomery County Circuit Court to not impose a term of imprisonment and therein hinder the progress Mr. Yevsukov has made. The impact in the disparity in treatment continues to be remarkable, as does the Government's obvious concern about the Court hearing from the individuals whose claims it seeks to proffer. If the latter were otherwise, the Government could unquestionably afford immunity to all those who invoked their Fifth Amendment rights. Doing so, however, might cause its carefully crafted, though ultimately wanting, case to go off-script.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have **emailed** a true and correct copy of the foregoing Second Supplement on this 11th day of January 2010, **(as well as electronic filing transmission)** to:

**VIA FED EX DELIVERY**
Hon. Peter J. Messitte
United States District Court
for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

**VIA EMAIL TRANSMISSION:  bryan.foreman@usdoj.gov**
Bryan E. Foreman, Esq.
Assistant United States Attorney
Office of the United States Attorney
United States District Court
for the District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, Maryland  20770

**VIA EMAIL TRANSMISSION: john_taberski@mdp.uscourts.gov**
**Mr. John Taberski, U.S. Probation Officer**
U.S. Probation Office
9200 Edmonston Road, Suite 200
Greenbelt, Maryland 20770
(301)344-0510/**(301)344-3622**

                                    /s/
                          Steven D. Kupferberg, Bar #00116